UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS,<br><br>               Plaintiff,<br><br>v.<br><br>NANTUCKET PAVERS, INC.,<br><br>               Defendant. | Case No. 1:23-cv-10770<br><br>**COMPLAINT** |

## INTRODUCTION

1. Without applying for or receiving a federal industrial stormwater discharge permit, Nantucket Pavers, Inc. ("Nantucket Pavers" or the "Company") has been discharging industrial stormwater from its concrete products facility at 22 Hollister Road, Seekonk, Massachusetts (the "Facility"). Pollutants from the Facility are picked up in stormwater and discharged directly into adjacent wetlands that flow into the Palmer River ("Palmer River Wetlands").

2. Industrial stormwater from concrete product manufacturing facilities likely contains pollutants that pose a threat to water quality, wetlands, and aquatic ecosystems.

3. Nantucket Pavers is not properly monitoring or controlling its stormwater discharges as is required by the federal Clean Water Act, 33 U.S.C. §1251 *et seq*. (the "Clean Water Act" or the "Act").

4. The Commonwealth of Massachusetts (the "Commonwealth") brings this civil suit to enforce the requirements of the federal Clean Water Act and is seeking injunctive relief, civil penalties, and other relief the Court deems appropriate to redress the Facility's illegal discharges of pollution.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the parties and the subject matter of this action pursuant to Section 505(a)(1)(A) of the Act, 33 U.S.C. § 1365(a)(1)(A), and 28 U.S.C. § 1331 (an action arising under the laws of the United States).

6. On October 25, 2023 the Commonwealth provided notice of Nantucket Pavers' violations of the Clean Water Act, and of its intention to file suit against Nantucket Pavers (the "Notice Letter"), to the Administrator of EPA; the Administrator of EPA Region 1; the Commissioner of the Massachusetts Department of Environmental Protection; and to Nantucket Pavers, as required by the Act, 33 U.S.C. § 1365(b)(1)(A).

7. More than sixty days have passed since the Commonwealth served notice.

8. This action is not barred by any prior state or federal enforcement action addressing the violations alleged in this Complaint.

9. The Commonwealth has an interest in protecting for its residents the integrity of Massachusetts waters, and the related health, safety, economic, recreational, aesthetic, and environmental benefits those waters provide. The interests of the Commonwealth have been, are being, and will continue to be adversely affected by Defendant's failure to comply with the Clean Water Act, as alleged in this Complaint. The requested relief will redress the harms to the Commonwealth caused by Defendant's activities. Nantucket Pavers' continuing acts and

omissions, as alleged in this Complaint, will irreparably harm the Commonwealth, for which harm it has no plain, speedy, or adequate remedy at law.

10. Venue is proper in the District Court of Massachusetts pursuant to Section 505(c)(1) of the Act, 33 U.S.C. § 1365(c)(1), because the source of the violations is located within this judicial district.

## PARTIES

11. Plaintiff is the Commonwealth, appearing by and through the Attorney General.

12. The Attorney General is the chief law officer of the Commonwealth, with offices at One Ashburton Place, Boston, Massachusetts. She is authorized to bring this action and to seek the requested relief under G.L. c. 12, §§ 3 and 11D.

13. Nantucket Pavers is a domestic corporation that lists its principal address as 71 Fall River Avenue, Rehoboth, Massachusetts.

## STATUTORY BACKGROUND

### Federal Clean Water Act Requirements

14. The objective of the Clean Water Act is to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." Section 301(a) of the Act, 33 U.S.C. § 1251(a).

15. The Clean Water Act makes the discharge of pollution into waters of the United States unlawful unless the discharge is in compliance with certain statutory requirements, including the requirement that the discharge be permitted by EPA under the National Pollutant Discharge Elimination System ("NPDES"). *See* Sections 301(a), 402(a) and 402(p) of the Act, 33 U.S.C. §§ 1311(a), 1342(a), 1342(p). Polluted stormwater is the leading cause of water quality impairment in Massachusetts. During every rain or snowmelt event, runoff flows over the land surface, picking up

potential pollutants such as sediment, organic matter, nutrients, metals, and petroleum by-products. Polluted stormwater runoff can be harmful to plants, animals, and people. Sediments such as sands, clays, and silts are the most common pollutants in stormwater runoff by volume and weight. Sediment discharge significantly harms Massachusetts waters and is the primary cause of river and stream degradation nationwide. Excess sediment destroys aquatic habitats. It smothers smaller organisms that live on the bottom of rivers, streams, and wetlands, and starves the larger organisms that feed on them. Sediment also causes flooding by filling up areas that absorb rainwater and by altering riverine flows.

*General Industrial Stormwater Permit*

16.	To minimize polluted stormwater discharges from industrial facilities, EPA has issued a general industrial stormwater permit ("Stormwater Permit") under the NPDES program. *See* 60 Fed. Reg. 50804 (Sept. 29, 1995); 65 Fed. Reg. 64746 (Oct. 30, 2000); 73 Fed. Reg. 56572 (Sept. 29, 2008); 80 Fed. Reg. 34403 (June 4, 2015), 86 Fed. Reg. 10269 (Feb. 19, 2021).[1]

17.	Owners and operators of facilities that manufacture concrete products and discharge industrial stormwater to waters of the United States directly or through separate storm sewer systems, are subject to the requirements of this Stormwater Permit. Stormwater Permit, Appendix D, pg. D-2 (Sector E).

18.	The Stormwater Permit requires the Facility to, among other things:

    a.	prepare a stormwater pollution prevention plan ("SWPPP"), Stormwater Permit, Sections 6 and 8.E.3 (pgs. 55-64, 83);

---

[1] With exceptions not relevant here, the 2021 version of the Stormwater Permit contains the same provisions as the 2015 version of the Stormwater Permit, although the section and page numberings are occasionally different. For ease of reference, this Complaint cites to the 2021 Stormwater Permit revision.

b. submit to EPA a Notice of Intent ("NOI") to be covered by the Stormwater Permit, Stormwater Permit, Section 1.3 (pgs. 12-14) and Appendix G;

c. select, design, install, and implement pollutant control measures that minimize pollutants in stormwater discharges, Stormwater Permit, Sections 2, 8.E.2, and 8.E.3 (pgs. 17-26, 83);

d. collect and analyze stormwater samples and document monitoring procedures for monitoring requirements that apply to the Facility, including, among other things, quarterly benchmark monitoring for total suspended solids ("TSS"), Stormwater Permit, Sections 4 and 8.E.5 (pgs. 31-44, 84);

e. conduct and document routine Facility inspections and quarterly visual assessments to, among other things, sample and assess the quality of the Facility's stormwater discharges and ensure that stormwater control measures required by the permit are functioning and are adequate to minimize pollutant discharge, Stormwater Permit, Section 3 (pgs. 26-30);

f. conduct and document corrective actions and additional implementation measures within mandatory timelines to expeditiously eliminate excessive stormwater pollution whenever required by the permit, Stormwater Permit, Section 5 (pgs. 44-55); and

g. timely prepare and submit to EPA all required documents and reports, including but not limited to discharge monitoring reports and annual reports that include findings from the Facility inspections and visual assessments and the documentation of corrective actions, Stormwater Permit, Section 7 (pgs. 64-70).

*Citizen Suit Provision of the Federal Clean Water Act*

19. Section 505(a)(1) of the Act authorizes citizen enforcement actions against any "person," including individuals, corporations, or partnerships, for violations of NPDES permit requirements and for unpermitted discharges of pollutants. 33 U.S.C. §§ 1365(a)(1) and (f), 1362(5).

20. The Commonwealth is a "citizen" within the meaning of Section 505(g) of the Act, because it is a "person" having an interest which is or may be adversely affected by industrial stormwater pollution discharges. *See* 33 U.S.C. § 1365(g).

21. Under Section 505 of the Act, this Court has authority to enjoin Nantucket Pavers' violations of the Act's prohibition on unauthorized discharges of pollutants and to require the Company to comply with the Stormwater Permit. The Court also has authority to impose penalties of up to $64,618 per day for each of the Company's violations. *See* 33 U.S.C. §§ 1365(a); 1319(d); 40 C.F.R. § 19.4; 88 Fed. Reg. 989 (Jan. 6, 2023).

## STATEMENT OF FACTS

### Description of the Facility and Activities

22. Nantucket Pavers manufactures concrete products including patios, walls, firepits, steppingstones, and other concrete-related accessories at the Facility

23. The Facility is bordered to the south by the Palmer River Wetlands. The following October 2021 image obtained from Google Earth has been annotated by the Attorney General's Office to show the location of the Facility in proximity to the Palmer River Wetlands.



24. Pollutants associated with industrial activities, including concrete dust, are present on the ground surface of the Facility. Industrial materials, including concrete products and pollutants associated with industrial activities, including concrete dust, are referred to in herein as "Industrial Materials."

25. Nantucket Pavers stockpiles Industrial Materials uncovered outside. The October 2021 image set forth in Paragraph 23 shows uncovered Industrial Materials exposed to precipitation.

### Defendant's Discharge of Pollutants from the Facility

*Polluted Industrial Stormwater Discharges into Wetlands and Waterways*

26. During every rain event, runoff flows over Industrial Materials and the ground surface at the Facility.

27. Runoff picks up pollutants from the Industrial Materials and discharges them into the Palmer River Wetlands to the south of the Facility.

28. The Palmer River Wetlands flow to the Palmer River. The following 2018 image obtained from Google Earth has been annotated by the Attorney General's Office to show the connection of the Palmer River Wetlands to the Palmer River.



29. For the last five years, during the rain events listed in Exhibit A, Defendant has discharged industrial stormwater from the Facility into the Palmer River Wetlands.

*Potential Impacts from Pollutants in Nantucket Pavers Stormwater Discharges*

30. Nantucket Pavers' stormwater discharges likely contain pollutants including TSS.

31. TSS is an indicator parameter that measures the presence of solids, or sediment, suspended in a water sample. Sediment in discharges from the Facility is likely to include aggregate (sands and gravel), chemical admixtures, and cement. Even uncontaminated sediment destroys habitat, harms aquatic organisms, and can contribute to flooding. Sediment settles at the bottom of a river where it disrupts and smothers bottom-feeding organisms. Sediment becomes suspended in water, where it harms and kills fish by clogging their gills, making it harder for them to breathe. Excessive sedimentation harms the entire food chain by destroying habitat and

killing the smaller organisms on which larger ones depend. For example, sediment in the water column increases turbidity, reducing light penetration, decreasing the ability of plant communities to photosynthesize, preventing animals from seeing food, and reducing fish populations. Sediment poses particular risks to wetlands. Wetlands play an integral role in the ecology and hydrology of the watershed. The combination of shallow water, high levels of nutrients, and high primary productivity are ideal for the growth of organisms that form the base of the food web and feed many species of fish, amphibians, shellfish, and insects. TSS can harm wetlands by, among other ways, suffocating the native species and allowing noxious and invasive species to come in and dominate the area. Sedimentation can also decrease wetland volume, decrease the duration that wetlands retain water, and change plant community structure. This can severely harm vegetation, soils, and downstream water quality and significantly increase the risk of flooding.

32. The Palmer River Wetlands are connected to wetlands that the Commonwealth has designated as "Core Habitat" critical for the long-term persistence of the Northern Diamond-backed Terrapin, a state-listed threatened species. According to the Massachusetts Department of Fish & Game, protection of Core Habitat "is essential to safeguard the diversity of species and their habitats, intact ecosystems, and resilient natural landscapes across Massachusetts."[2]

**Nantucket Pavers' Failure to Comply with the Requirements of the Stormwater Permit**

33. Nantucket Pavers has not submitted any Notice of Intent to be covered by the Stormwater Permit.

---

[2] Massachusetts Department of Fish & Game, Division of Fisheries & Wildlife and The Nature Conservancy, BioMap2: Conserving the Biodiversity of Massachusetts in a Changing World (2010).

34. Nantucket Pavers has not complied with the terms of the Stormwater Permit.[3] In particular, Defendant has failed to:

    a. prepare a SWPPP for the Facility (violation of Sections 6 and 8.E.3 of the Stormwater Permit);

    b. submit an NOI for the Facility (violation of Section 1.3.2 of the Stormwater Permit);

    c. select, design, install, and implement pollutant control measures that minimize pollutants in stormwater discharges (violation of Sections 2, 8.E.2, and 8.E.3 of the Stormwater Permit);

    d. collect and analyze stormwater samples and document monitoring procedures for monitoring requirements that apply to the Facility, including quarterly benchmark monitoring for TSS (violation of Sections 4, 8.E.4, and 8.E.5 of the Stormwater Permit);

    e. conduct and document routine Facility inspections and quarterly visual assessments to, among other things, sample and assess the quality of the Facility's stormwater discharges, ensure that stormwater control measures required by the permit are functioning correctly and are adequate to minimize pollutant discharges, and ensure timely corrective actions are taken when they are not (violation of Section 3);

    f. conduct and document corrective actions and additional implementation measures within mandatory timelines to expeditiously eliminate excessive

---

[3] *See* footnote 1.

  g.  stormwater pollution whenever required by the permit (violation of Section 5of the Stormwater Permit); and

  h.  timely prepare and submit to EPA all documents and reports, including but not limited to discharge monitoring reports and annual reports that include findings from the Facility inspections and visual assessments and the documentation of corrective actions (violation of Section 7 of the Stormwater Permit).

## FIRST CAUSE OF ACTION
### Unpermitted Discharges of Industrial Stormwater:
### Violations of Section 301(a) of the Federal Clean Water Act, 33 U.S.C. § 1311(a)
### Against Nantucket Pavers and Ferreira Realty, LLC

35. The Commonwealth realleges and incorporates by reference the allegations contained in the above paragraphs.

36. Nantucket Pavers is a "person" within the meaning of Section 502(5) of the Clean Water Act, 33 U.S.C. § 1362(5).

37. The Palmer River Wetlands are "navigable waters" within the meaning of Section 502(7) of the Clean Water Act, 33 U.S.C. § 1362(7).

38. Every day for the last five years that Nantucket Pavers discharged industrial stormwater from the Facility into the Palmer River Wetlands without a Stormwater Permit is a separate and distinct violation of Section 301(a) of the Act, 33 U.S.C. § 1311(a), for each day on which the violation occurred and/or continued. *See also* Sections 505(a)(1) and (f), 33 U.S.C. §§ 1365(a)(1) and (f).

39. These violations establish an ongoing pattern of failure to comply with the Stormwater Permit's requirements.

## SECOND CAUSE OF ACTION
### Noncompliance with the Federal Stormwater Permit:
### Violations of Section 301(a) of the Federal Clean Water Act, 33 U.S.C. § 1311(a) against Nantucket Pavers

40. The Commonwealth realleges and incorporates by reference the allegations contained in the above paragraphs.

41. Nantucket Pavers has violated and continues to violate the Stormwater Permit by failing to implement its requirements, as set forth in paragraph 34, above.

42. Nantucket Pavers' violations of each of the requirements set forth in paragraph 34 above, is a separate and distinct violation of Section 301(a) of the Act, 33 U.S.C. § 1311(a), for each day on which the violation occurred and/or continued. *See also* Sections 505(a)(1) and (f), 33 U.S.C. §§ 1365(a)(1) and (f).

43. These violations establish an ongoing pattern of violations with the Stormwater Permit's requirements.

## RELIEF REQUESTED

WHEREFORE, the Commonwealth respectfully requests that this Court grant the following relief:

44. Require Nantucket Pavers to obtain coverage under and comply with EPA's federal Stormwater Permit;

45. Order Nantucket Pavers to pay civil penalties of up $64,618 per day for each of the Company's violations. *See* 33 U.S.C. §§ 1365(a); 1319(d); 40 C.F.R. § 19.4; 88 Fed. Reg. 989 (Jan. 6, 2023);

46. Order Nantucket Pavers to take appropriate actions to restore the quality of wetlands and waterways impaired by its unlawful activities;

47.     Award the Commonwealth's cost (including reasonable investigative, attorney witness, and consultant fees) as authorized by the Act, 33 U.S.C. § 1365(d); and

48.     Award any such other and further relief as this court may deem appropriate.

Dated: April 12, 2023

                              Respectfully submitted,

                              COMMONWEALTH OF MASSACHUSETTS

                              By its attorney,
                              ANDREA JOY CAMPBELL
                              ATTORNEY GENERAL

                              */s/ EField*
                              Emily Mitchell Field (Bar No.703726)
                              Assistant Attorney General
                              Environmental Protection Division
                              Office of the Attorney General
                              One Ashburton Place, 18th Floor
                              Boston, Massachusetts 02108
                              Tel: (617) 727-2200
                              Emily.Field@mass.gov